Kim v XP Sec., LLC (2026 NY Slip Op 01731)

Kim v XP Sec., LLC

2026 NY Slip Op 01731

Decided on March 24, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 24, 2026

Before: Webber, J.P., Gesmer, González, Pitt-Burke, Higgitt, JJ. 

Index No. 651341/20|Appeal No. 5409-5410|Case No. 2025-00123, 2025-05085|

[*1]Bruce Kim, Respondent,
vXP Securities, LLC, Now Known as XP Investments US, LLC, Appellant, XP Investimentos S.A., et al., Defendants.

Kasowitz LLP, New York (Joshua D. Fulop of counsel), for appellant.
Lawrence Oh Law PC, New York (Lawrence P. Oh of counsel), for respondent.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered November 22, 2024, which, to the extent appealed from as limited by the briefs, denied defendant XP Securities, LLC's (XP) motion for summary judgment dismissing plaintiff's breach of contract claim, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered on or about July 11, 2025, which, to the extent appealed from, denied XP's motion in limine to preclude expert testimony, unanimously dismissed, without costs, as taken from a nonappealable paper.
Defendant XP,[FN1] a broker dealer, hired plaintiff in 2017 to be the head of its Asia Desk. At the time he was hired, he was a professional with decades of experience in the emerging markets foreign exchange (Forex) community. He had conceived a technology-based solution designed to radically improve Forex trading, to be called HUBL, and was looking for a firm that would provide him with the support necessary to develop it. XP hired Kim specifically for the purpose of developing, at XP's expense, a computerized Forex technology "stack" to more efficiently manage bid price points in the industry. XP represented to plaintiff that it had the technology and infrastructure necessary to accomplish this. Plaintiff was hired pursuant to a five-year employment agreement (the Agreement), which provided that he could only be terminated for "cause." The Agreement defined "cause" as, among other things, insubordination and "willful or gross serious misconduct" in the performance of an employee's duties and responsibilities, including conduct in disregard of XP's written rules or policies. XP's employee handbook, as well as its separate written ethics code, prohibited employees from engaging in offensive or disruptive behavior, including threatening employees; using abusive or vulgar language; interfering with others in the performance of their duties; engaging in acts of disloyalty to XP, including but not limited to slandering or disparaging XP, its officers and/or employees; and from displaying discourteous or inappropriate conduct with clients and customers.
After plaintiff joined XP, he learned that it did not have the promised resources necessary to develop HUBL. In late January 2020, XP management notified XP's entire New York office via email that a senior employee, Silveira, would be leaving and that XP would be closing down parts of its business, including Kim's division. The email also directed the entire New York office that "nothing beyond the announcement" of Silveira's departure "[was] to be discussed/commented outside of XPNY." Kim sent an email to the employees in the New York office, pointing out that they had been instructed not to discuss this change, but that the employees in the London office had not been given the same instructions. He suggested that the two offices should be given the same instructions to avoid confusion. On January 27, 2020, XP suspended Kim and barred him from its offices for his "inappropriate" and "insubordinate" email.
By letter dated February 27, 2020, XP purported to terminate Kim "for cause," specifically citing his "common law disloyalty" and "willful or gross serious misconduct" as referred to in paragraphs 11(b)(i) and (v) of the Agreement. The letter also made general allegations that Kim was "derisive" and "rude."
Kim commenced this action, which, as amended, alleged (1) XP's breach of contract for not dedicating any funds to HUBL; (2) XP's breach of the covenant of good faith and fair dealing for not dedicating any funds to HUBL; (3) fraud in the inducement against all of the defendants, because of their false representations to Kim that XP had the technological tools and skills that would enable it to support Kim's development of HUBL; (4) declaratory judgment against XP that the conduct plaintiff was accused of did not amount to "common law disloyalty" or "willful or gross misconduct"; and (5) breach of contract against XP for its "wrongful termination of [him] for 'cause.' "
Supreme Court properly denied XP's motion for summary judgment dismissing plaintiff's breach of contract cause of action for wrongful termination. An arm's length commercial contract executed by counselled, sophisticated parties, as here, should be enforced according to its terms (see Madison Ave. Leasehold, LLC v Madison Bently Assoc. LLC, 8 NY3d 59, 66 [2006]). XP alleges that plaintiff's termination complied with the Agreement because he used highly offensive language to denigrate the character and performance of certain employees, as well as ethnic slurs and derogatory language towards an individual employed by a client. Plaintiff was admonished and disciplined for these actions on several occasions. However, plaintiff was ultimately terminated for alleged insubordination when he responded to an email directing that the departure of the head manager not be discussed outside of XP's New York office. Kim suggested in his responsive email that the London office be given the same instruction to avoid confusion.
On this record there are triable issues of fact that preclude summary judgment in XP's favor. First, there are questions of fact as to whether the rules or policies on which XP relies were followed and uniformly enforced - in particular, its rules prohibiting "offensive or disruptive behavior, including . . . using abusive or vulgar language" and "discourteous or inappropriate conduct with clients/customers." Multiple XP employees testified that emotional exchanges, yelling, cursing, and demeaning language, including some of the same slurs Kim is alleged to have used, were common among employees at XP. This testimony raises questions as to whether Kim's rude behavior was in line with the prevailing culture at XP and whether XP's reference to it as a reason for his termination was pretextual.
Second, there are questions of fact as to whether the financial burden associated with the promises XP made to plaintiff at the time of his hiring was the reason XP examined more closely plaintiff's offensive work comments and chose termination as the discipline to impose. Finally, there are questions of fact as to whether plaintiff's email sent solely to the members of the New York office concerning a management change constituted an "insubordinate" or "inappropriate" response to an email directing employees not to discuss the matter outside the New York office.
The parties disagree about whether the Agreement defines misconduct permitting termination for cause as "gross serious misconduct," "willful misconduct," or both. However, as discussed above, regardless of which standard applies, there are issues of fact that preclude a grant of summary judgment in this case. Accordingly, we need not reach that issue on this appeal.
The court's ruling on whether to preclude testimony of plaintiff's expert is "an evidentiary ruling from which no appeal lies" (Moghtaderi v Apis Capital Advisors, LLC, 234 AD3d 616, 617 [1st Dept 2025]; Rivera v New York Health & Hosps. Corp. [Bellevue Hosp. Ctr. & Gouverneur Diagnostic & Treatment Ctr.], 38 AD3d 476, 476 [1st Dept 2007]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 24, 2026

Footnotes

Footnote 1: XP is now known as XP Investments, or "XPI." For simplicity, this order refers to defendant as XP.